OPINION *Page 2 
{¶ 1} Plaintiff-Appellant, Robert Tack appeals the decision of the Stark County Court of Common Pleas to grant summary judgment in favor of Defendant-Appellee, PCC Airfoils, Inc.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} Appellee, a manufacturer of metal turbine blades for jet engines and electric power generators, hired Appellant to work in its Minerva, Ohio facility in 1979. Appellant was employed in Appellee's maintenance department, working as a pipefitter. Appellant was a bargaining unit member of a labor union known as Metalworkers Alliance, Inc. and during his employment, Appellant was represented by the labor union.
 {¶ 3} Appellant's wages, hour, and terms and conditions of employment were governed by a collective bargaining agreement between Appellee and Metalworkers Alliance, Inc. Plant supervisors are responsible for enforcing the rules and regulations. As part of the plant rules, and specifically in the maintenance department where Appellant was assigned, the rules and regulations require the employees to wear certain personal protection equipment/clothing for safety purposes. The personal protection equipment/clothing includes steel toe boots, safety glasses with side shields and jeans.
 {¶ 4} The collective bargaining agreement contains a progressive disciplinary policy that delineates a process wherein for an employee's first violation, the employee receives a verbal warning; for a second violation, the employee receives a written warning; for a third violation, the employee receives a suspension; for a fourth violation, the employee is terminated. In some cases of a violation necessitating termination, a *Page 3 
bargaining unit member can avoid termination by entering into a "Last Chance Agreement" with Appellee.
 {¶ 5} On January 26, 2000, Appellant received a verbal warning for smoking in the plant. Appellant received a written warning on February 2, 2000 for smoking in the plant.
 {¶ 6} On June 13, 2000, Appellant was involved in an argument with a facility engineer during a job assignment and during the argument, Appellant threw his tools. James Deitrick, Appellee's Human Resources Manager, determined Appellant's actions constituted insubordination and necessitated immediate termination, rather than suspension under the progressive disciplinary policy. On or about August 17, 2000, in order for Appellant to avoid being discharged for insubordination, Appellant, Appellee and Metalworkers Alliance, Inc. entered into a Last Chance Agreement ("LCA") drafted by James Deitrick. The LCA provided that Appellant could be discharged for "any violation of the company's rules and regulations, no matter how slight (e.g. smoking in the plant, failure to follow instructions, failure to abide by any and all safety rules, etc.)." The LCA was to remain in effect for the "life of Bob's employment with PCC Airfoils, Inc."
 {¶ 7} Appellant received a verbal warning on June 22, 2005 for failing to wear proper fall protection. On or about that date, based upon this safety violation, Appellee and Metalworkers Alliance, Inc signed a written reaffirmation of Appellant's LCA. On July 22, 2005, a supervisor observed Appellant not wearing the side shields on his safety glasses and the supervisor verbally counseled Appellant on his safety violation without implementing the progressive disciplinary process. A week later, the *Page 4 
Environmental Health and Safety and Human Resources Supervisor, Scotty Richmond, witnessed Appellant not wearing the side shields on his safety glasses. Based upon this violation, Appellant was suspended and then terminated pursuant to the terms of the LCA.
 {¶ 8} After his termination, Appellant filed complaints with the U.S. Department of Labor, Occupational Safety and Health Administration and the State Employment Relations Board. Both complaints were dismissed. In 2006, Appellant filed a Charge of Discrimination with the Ohio Civil Rights Commission alleging sexual discrimination. The OCRC issued a Final Order finding no probable cause to believe Appellee discriminated against Appellant because of his gender. Appellant filed a petition with the Stark County Court of Common Pleas seeking a judicial review of the OCRC final order. The trial court affirmed the decision of the OCRC and dismissed Appellant's petition. See Tack v. PCC Airfoils, Inc. (Nov. 15, 2006), Stark C.P. No. 2006CV02200, unreported.
 {¶ 9} On May 8, 2007, Appellant filed a complaint against Appellee with the Stark County Court of Common Pleas alleging discrimination based upon his gender in violation of R.C. 4112.02, breach of oral contract, breach of written contract and termination in violation of public policy. Appellee filed a motion to dismiss Appellant's claims of breach of contract and termination in violation of public policy, which the trial court granted on September 19, 2007. Appellee then filed a motion for summary judgment on Appellant's claim of sex discrimination. The trial court granted Appellee's motion for summary judgment on December 19, 2007 and it is from this judgment Appellant now appeals. *Page 5 
 {¶ 10} Appellant raises six Assignments of Error:
 {¶ 11} "I. THE TRIAL COURT ERRED IN GRANTING PCC'S MOTION FOR SUMMARY JUDGMENT BY FINDING THAT PLAINTIFF DID NOT PROVIDE A RECORD WHICH CONTAINED SUFFICIENT FACTS THAT SHOWED THE EXISTENCE OF BACKGROUND CIRCUMSTANCES.
 {¶ 12} "II. THE TRIAL COURT COMMITTED ERROR BY FINDING THAT THE PLAINTIFF FAILED TO PROVIDE MATERIAL FACTS THAT DEMONSTRATED THAT SIMILARLY SITUATED FEMALES WERE TREATED MORE FAVORABLY THAN PLAINTIFF.
 {¶ 13} "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO SCRUTINIZE THE DISCIPLINARY CHOICES OF PCC'S HUMAN RESOURCE MANAGER BY FINDING THAT THE COURT DID NOT HAVE THE ABILITY TO SECOND GUESS THE COMPANY'S DECISIONS REGARDING DISCIPLINE.
 {¶ 14} "IV. THE TRIAL COURT ERRONEOUSLY DETERMINED THE RECORD DID NOT CONTAIN EVIDENCE OF A SIMILARLY SITUATED FEMALE BECAUSE NONE OF THE FEMALES REFERENCED BY THE PLAINTIFF WERE UNDER A LAST CHANCE AGREEMENT.
 {¶ 15} "V. THE TRIAL COURT COMMITTED ERROR WHEN IT REFUSED TO REVIEW PLAINTIFF'S ALLEGATION THAT HE WAS A VICTIM OF DISCRIMINATORY CONDUCT AS THE SAME RELATES TO THE USE OF A LAST CHANCE AGREEMENT TO DISCHARGE THE PLAINTIFF BY FINDING THE CLAIM TIME BARRED. (SIC) BY A SIX YEAR LIMITATION PERIOD. *Page 6 
 {¶ 16} "VI. THE TRIAL COURT ERRED BY FINDING THAT THE RECORD DID NOT CONTAIN MATERIAL FACTS DEMONSTRATING PRE-TEXT."
 I., II., III., IV., V., and VI. {¶ 17} Appellant argues generally in his six Assignments of Error the trial court erred in granting summary judgment in favor of Appellee on Appellant's claim of sex discrimination pursuant to R.C. 4112.02, and as such, we will address the Assignments of Error simultaneously. Summary Judgment motions are to be resolved in light of the dictates of Civ. R. 56. This rule was reaffirmed by the Supreme Court of Ohio in State exrel. Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448, 1996-Ohio-211:
 {¶ 18} "Civ. R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 19} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35. *Page 7 
 {¶ 20} R.C. 4112.02 provides in part:
 {¶ 21} "It shall be an unlawful discriminatory practice: (A) For any employer, because of the * * * sex * * * of any person, to discharge without cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 22} Appellant claims Appellee failed to apply its disciplinary procedures for violations of safety rules in a nondiscriminatory manner and the discriminatory application of the disciplinary process was a primary factor in Appellant's termination. Appellant is a male. Appellant alleges Appellee terminated his employment for a violation of a safety rule while female employees were not disciplined for comparable violations of the safety rules.
 {¶ 23} Ohio courts have adopted the McDonnell Douglas formula to claims for sex discrimination brought under R.C. Chapter 4112.Kundtz v. AT T Solutions, Inc., 10th Dist. No. 05AP-1045, 2007-Ohio-1462, ¶ 46 citing Starner v. Guardian Indus. (2001), 143 Ohio App.3d 461, 471, 758 N.E.2d 270. Generally, in order to establish a prima facie case of employment discrimination, the employee must prove: (1) that he was a member in a protected class; (2) that he was discharged from his job by the employer; (3) that he was qualified for the position; and (4) that he was replaced by a person who did not belong to the protected class. McDonnell Douglas Corp. v. Green (1973),411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668.
 {¶ 24} However, in cases involving reverse gender discrimination, courts have modified the McDonnell Douglas standard to enable plaintiffs who are members of a *Page 8 
dominant group to prove a prima facie case of discrimination. To show reverse discrimination and to avoid a summary judgment, the plaintiff must establish a prima facie case by showing: (1) background circumstances supporting the suspicion that the defendant is the unusual employer who discriminates against the majority; and (2) that the employer treated employees who were similarly situated, but not members of the protected group, more favorably. Thompson v. Dover Elks, 5th Dist. No. 2002AP020016, 2002-Ohio-5610, ¶ 16 citingMurray v. Thistledown Racing Club, Inc. (C.A.6, 1985), 770 F.2d 63, 67.
 {¶ 25} In the present case, the trial court found Appellant failed to provide sufficient Civ. R. 56 evidence that Appellee is the unusual employer who discriminates against the majority. The trial court further found that because female employees were also disciplined for violations of safety procedures, subject to Last Chance Agreements and subsequently discharged based thereon, Appellant failed to show similarly situated female employees were treated more favorably and retained while Appellant, as a male employee, was terminated.
 {¶ 26} Upon our de novo review of the Civ. R. 56 evidence, we find Appellant failed to establish that Appellee is the unusual employer who discriminates against male employees. In asserting that Appellee is the unusual employer that discriminates against the majority, Appellant focuses on the discriminatory enforcement of the safety rules and the disciplinary process. Specifically, he argues that he witnessed female employees violate the safety procedures in their failure to wear safety glasses with side shields and not receive disciplinary action in comparison to the punishment Appellant, as a male employee, received for the same violation. *Page 9 
 {¶ 27} In Appellant's deposition, however, he testified:
 {¶ 28} "Q. But it's your testimony there would be men who held maintenance codes who might violate the rules on PPE [personal protection equipment] and in every instance were disciplined for it?
 {¶ 29} "A. No.
 {¶ 30} "Q. In some instances they weren't?
 {¶ 31} "A. Correct.
 {¶ 32} "Q. What was the difference? Why would they be disciplined or not?
 {¶ 33} "A. To be honest with you?
 {¶ 34} "Q. Yes, sure.
 {¶ 35} "A. Depends who you was.
 {¶ 36} "Q. What do you mean by that?
 {¶ 37} "A. Just as it is. Depends who you was.
 {¶ 38} "Q. Could it depend on who the supervisor was?
 {¶ 39} "A. Oh, it could be anything. Possible anything. It could be supervisor or I might know somebody higher up the ladder and I don't have to worry about it. It depends who you are. And depends what mood the plant's in." (Tack Depo., pp. 41-42).
 {¶ 40} Appellant further testified:
 {¶ 41} "Q. If you know, would he agree with your assertion that every time a male employee in the maintenance codes violated a PPE rule they were disciplined for it?
 {¶ 42} "A. Every time? *Page 10 
 {¶ 43} "Q. Every time.
 {¶ 44} "A. No.
 {¶ 45} "Q. Would you agree that the discipline of male employees for violating PPE rules was selective?
 {¶ 46} "A. Yeah." (Tack Depo., p. 46).
 {¶ 47} By Appellant's own admissions, while Appellee may not have consistently disciplined female employees for safety violations, Appellee also did not uniformly enforce safety violations against its male employees. James Deitrick, the Human Resources Manager, testified that he was aware the supervisors were not uniformly enforcing the plant rules against both men and women. (Deitrick Depo., p. 30). There is further Civ. R. 56 evidence that since 1998, Appellee has entered into Last Chance Agreements with at least seven female employees and three of the female employees subject to Last Chance Agreements were subsequently discharged. (Deitrick Aff., ¶ 11).
 {¶ 48} Assuming arguendo that Appellant established a prima facie case of discrimination, the next inquiry is whether Appellee had a legitimate nondiscriminatory reason for terminating Appellant. Bellinger v. WeightWatchers Gourmet Food Co., 142 Ohio App.3d 708, 756 N.E.2d 1251, 1255
citing Barker v. Scoville, Inc. (1983), 6 Ohio St.3d 146,451 N.E.2d 807. Appellant was subject to the LCA due to a violation of the company rules and regulations as set forth by the collective bargaining agreement. The LCA stated that Appellant would be subject to termination for any violation of the company rules and regulations, which included violation of the safety rules. Appellant failed to wear his safety glasses with the side shields on July 29, 2005, in violation of *Page 11 
the company rules and regulations regarding personal protection equipment required to be worn by the employees in the maintenance department. Appellant acknowledged in his deposition that on July 29, 2005, Scotty Richmond observed Appellant not wearing the side shields on his safety glasses. (Tack Depo., p. 23). Appellant was in violation of the company rules and regulations and the terms of his LCA and was therefore subject to disciplinary action, which was termination.
 {¶ 49} Upon review of the Civ. R. 56 evidence before us, we find that reasonable minds can only reach one conclusion that Appellee was entitled to summary judgment on Appellant's claim of reverse gender discrimination. Appellant's six Assignments of Error are overruled.
 {¶ 50} The judgment of the Stark County Court of Common Pleas is affirmed.
 By Delaney, J. Farmer, J. and Edwards, J. concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to Appellant. *Page 1