[Cite as *Horsley v. Burton*, 2010-Ohio-6315.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

DONALD HORSLEY,                          :
                                         :
        Plaintiff-Appellant,             :         Case No: 10CA3356
                                         :
        v.                               :
                                         :         DECISION AND
JENNIFER M. BURTON, et al.,              :         JUDGMENT ENTRY
                                         :
        Defendants-Appellees.            :         File-stamped date:  12-10-10

---

APPEARANCES:

James H. Banks, Dublin, Ohio, for Appellant.

Jacklyn J. Ford and Peter A. Lusenhop, Vorys, Sater, Seymour and Pease, LLP, Columbus, Ohio, for Appellees.

---

Kline, J.:

**{¶1}** Donald Horsley (hereinafter "Horsley") appeals the judgment of the Scioto County Court of Common Pleas, which granted summary judgment in favor of Jennifer M. Burton (n/k/a Jennifer Meade, and hereinafter "Meade") and Scioto Residential Services, Inc., (hereinafter "Scioto Residential").  (When discussing the defendants-appellees collectively, we will refer to them as "Scioto Residential.").  At the trial court level, Horsley alleged that Scioto Residential engaged in several impermissible employment practices.  And on appeal, he contends that the trial court erred in granting summary judgment for Scioto Residential on Horsley's age discrimination, gender discrimination, and whistleblower claims.  We disagree.  Instead, we find (1) that there are no genuine issues of material fact as to any of Horsley's claims; (2) that Scioto

Residential is entitled to judgment as a matter of law on all of Horsley's claims; and (3) that reasonable minds can come to just one conclusion as to all of Horsley's claims, and that conclusion is adverse to Horsley. Accordingly, we affirm the judgment of the trial court.

I.

**{¶2}** Scioto Residential maintains fourteen homes that provide residential care for individuals with severe developmental disabilities, and Meade is Scioto Residential's Executive Director. On September 22, 2006, Scioto Residential hired Horsley as a part-time support professional. In that position, Horsley assisted Scioto Residential's residents with their daily needs. When he started at Scioto Residential, Horsley was sixty-five years old, earned $7.25 per hour, and worked between twenty-five-to-thirty hours per week. Additionally, for the first nine months of his employment, Horsley worked mainly at Scioto Residential's Robinson home (hereinafter "Robinson").

**{¶3}** On June 29, 2007, one of Horsley's co-workers apparently informed Scioto Residential that Horsley had been copying patient records. And on July 6, 2007, a supervisor at Scioto Residential met with Horsley to discuss the alleged copying incident. The supervisor informed Horsley that copying patient records was forbidden, but Horsley denied the copying allegations.

**{¶4}** In July 2007, Scioto Residential transferred Horsley to the Eleventh Street home (hereinafter "Eleventh Street"). Horsley's position, duties, and rate of pay did not change at Eleventh Street, and, after the transfer, he worked the same amount of hours per week.

**{¶5}** Sometime later, Scioto Residential transferred Horsley from Eleventh Street to the McDermott home (hereinafter "McDermott"). Horsley's position, duties, and rate of pay did not change at McDermott, but, after this transfer, he apparently worked fewer hours per week.

**{¶6}** In August 2007, Scioto Residential had two openings for the Support Manager position. Horsley applied for these openings, but Scioto Residential gave the promotions to a younger female, Amie Wolfe (hereinafter "Wolfe"), and a younger male, Nick Conley (hereinafter "Conley"). Scioto Residential claimed that Wolfe and Conley were better qualified for the Support Manager position.

**{¶7}** In or around August 2007, Horsley started making complaints about Scioto Residential to various state officials. The Ohio Department of Mental Retardation and Developmental Disabilities investigated these complaints, and, apparently, "[l]icensure violations were found during some visits that resulted in the issuance of deficiencies." October 29, 2007 Letter to Donald Horsley.

**{¶8}** In September 2007, two Scioto Residential employees saw Horsley copying patient records. Robert Luongo (hereinafter "Luongo") claims that he "personally witnessed Don Horsley copying resident medical records and removing those records from the McDermott home." Affidavit of Robert Luongo at ¶3. And Candace Hackworth (hereinafter "Hackworth") claims that, on September 15, 2007, she "personally witnessed Don Horsley copying resident medical records. * * * On September 16, 2007, [she] asked Mr. Horsley what he did with the copies of the records which he copied, and he told [Hackworth] that he took them home." Affidavit of Candace Hackworth at ¶3-4.

**{¶9}** On September 20, 2007, Scioto Residential supervisors met with Horsley to discuss the copying and removal of patient records. Horsley denied the allegations, but Scioto Residential suspended him pending an investigation into the matter. Then, on February 14, 2008, Scioto Residential informed Horsley that he was being terminated for the September 2007 copying-and-removal incident.

**{¶10}** On March 5, 2008, Horsley filed his complaint in the present case. Horsley alleged that Scioto Residential (1) engaged in age discrimination, (2) engaged in gender discrimination, and (3) retaliated against Horsley for reporting violations to the state. Eventually, the trial court granted Scioto Residential's motion for summary judgment as to all of Horsley's claims.

**{¶11}** Horsley appeals and asserts the following assignment of error: "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AND DISMISSING ALL OF PLAINTIFF-APPELLANT'S CLAIMS, SUCH THAT THE JUDGMENT MUST BE REVERSED."

II.

**{¶12}** In his sole assignment of error, Horsley contends that the trial court erred in granting summary judgment to Scioto Residential on all of his employment-related claims. "Because this case was decided upon summary judgment, we review this matter de novo, governed by the standard set forth in Civ.R. 56." *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, at ¶8. Summary judgment is appropriate only when the following have been established: (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the

nonmoving party. Civ.R. 56(C). See, also, *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146; *Grimes v. Grimes*, Washington App. No. 08CA35, 2009-Ohio-3126, at ¶14. In ruling on a motion for summary judgment, the court must construe the record and all inferences that arise from it in the opposing party's favor. *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 535, 1994-Ohio-531, superseded by statute on other grounds.

**{¶13}** The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). See, also, *Dresher* at 294-295; *Grimes* at ¶15.

**{¶14}** "In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail." *Grimes* at ¶16 (citation omitted). "Accordingly, we afford no deference to the trial court's decision in answering that legal question." *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 412. See, also, *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809; *Grimes* at ¶16.

**{¶15}** Here, we must examine whether the trial court correctly granted summary judgment on Horsley's age discrimination claim, his gender discrimination claim, and his retaliation claim (a/k/a his "whistleblower" claim).

## A. The *McDonnell Douglas* Test

**{¶16}**     In relevant part, R.C. 4112.02(A) provides that "[i]t shall be an unlawful discriminatory practice * * * [f]or any employer, because of the * * * sex * * * [or] age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Furthermore, "[n]o employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." R.C. 4112.14(A).

**{¶17}**     "Courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult, and [t]here will seldom be 'eyewitness' testimony as to the employer's mental processes. * * * Thus, when analyzing []discrimination claims that rely primarily upon circumstantial evidence, Ohio courts employ the framework articulated in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792." *Ohio Univ. v. Ohio Civ. Rights Comm.*, 175 Ohio App.3d 414, 2008-Ohio-1034, at ¶67 (internal citations omitted). Therefore, Horsley must first establish a prima facie case of discrimination. Id.; *McDonnell Douglas* at 802. "To establish a prima facie case * * *, [Horsley] must show that 1) [he] is a member of the protected class; 2) [he] was subject to an adverse employment action; 3) [he] is qualified for the position; and 4) [he] was replaced by, or [his] discharge permitted the retention of, a person of comparable qualifications outside the protected class." *Goodyear v. Waco Holdings, Inc.*, Cuyahoga App. No. 91432, 2009-Ohio-619, at ¶30, citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio

St.3d 578, 582, 1996-Ohio-265. See, also, *McDonnell Douglas* at 802; *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, at paragraph one of the syllabus (stating that, for age discrimination cases, a plaintiff must show that he or she "was replaced by, or the discharge permitted the retention of, a person of substantially younger age"). "The plaintiff has the burden of establishing a prima facie case of discrimination by a preponderance of the evidence." *Mosley v. Miami Shores of Moraine, L.L.C.*, Montgomery App. No. 21587, 2007-Ohio-2138, at ¶9, citing *Omobien v. Ohio Civ. Rights Comm.* (1993), 89 Ohio App.3d 100, 103-104; see, also, *Basinger v. Pilarczyk* (2000), 137 Ohio App.3d 325, 328.

**{¶18}** "Once an employee establishes a prima facie case of discrimination, the burden shifts to the employer to provide some legitimate, nondiscriminatory reason for the action taken. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 503[.] If the employer establishes a nondiscriminatory reason, the employee then bears the burden of showing the employer's proffered reason was a pretext for impermissible discrimination. *Cruz v. South Dayton Urological Associates, Inc.* (1997), 121 Ohio App.3d 655, 659[.]" *Steadman v. Sterilite Corp.*, Stark App. No. 2009 CA 00280, 2010-Ohio-3391, at ¶71. "To make a submissible case on the credibility of his employer's explanation, [Horsley] is 'required to show by a preponderance of the evidence either 1) that the proffered reasons had no basis in fact; 2) that the proffered reasons did not actually motivate his discharge; or 3) that they were insufficient to motivate discharge.'" *Tinker v. Sears, Roebuck & Co.* (C.A.6, 1997), 127 F.3d 519, 523, quoting *Manzer v. Diamond Shamrock Chems. Co.* (C.A.6, 1994), 29 F.3d 1078, 1084, which was overruled on other grounds by *Geiger v. Tower Automotive* (C.A.6, 2009), 579 F.3d 614.

See, also, *Pattison v. W.W. Grainger, Inc.*, Cuyahoga App. No. 93648, 2010-Ohio-2484, at ¶33.

### B. Horsley's Age Discrimination Claim

**{¶19}**    As to Horsley's age-discrimination claim, there are four potential adverse employment actions that we must analyze under the *McDonnell Douglas* framework. These potential adverse employment actions are: (1) the transfer from Robinson to Eleventh Street; (2) the transfer from Eleventh Street to McDermott; (3) Wolfe and Conley receiving the Support Manager position instead of Horsley; and (4) Horsley's termination.  And here, we find that the trial court correctly granted summary judgment to Scioto Residential as to all four potential adverse employment actions.

### 1. The Transfer From Robinson to Eleventh Street

**{¶20}**    In relation to the transfer from Robinson to Eleventh Street, we find that Horsley did not establish a prima facie case of age discrimination.  Here, Horsley failed to demonstrate that the transfer from Robinson to Eleventh Street constituted an adverse employment action.  "An 'adverse employment action' is conduct that results in a materially adverse change in the terms and conditions of employment." *Lookabaugh v. Spears*, Clark App. No. 2007 CA 16, 2008-Ohio-1610, at ¶16, citing *Keeton v. Flying J, Inc.* (C.A.6, 2005), 429 F.3d 259, 262-263; *Means v. Cuyahoga Cty. Dept. of Justice Affairs*, Cuyahoga App. No. 87303, 2006-Ohio-4123, at ¶15.  Moreover, "[a] transfer without a change in benefits, salary, title, or work hours is usually not an adverse employment action." *Lookabaugh* at ¶15, citing *Policastro v. Northwest Airlines, Inc.* (C.A.6, 2002), 297 F.3d 535, 539.  In this regard, Meade testified that Scioto Residential transferred Horsley to Eleventh Street "at the same level of employment, at the same

rate of pay, and the same hours." February 5, 2010 Affidavit of Jennifer Meade at ¶6. Horsley's own testimony confirms Meade's statement. First, Horsley testified that he had the same position and the same duties at Eleventh Street. And second, Horsley testified that he suffered no cut in pay or hours.

**{¶21}**     "Q  When you moved to 11th Street, you didn't work any less hours?

**{¶22}**     "A  No.

**{¶23}**     "Q  And there was no reduce in pay?

**{¶24}**     "A  No."  Deposition of Donald Larry Horsley at 35.

**{¶25}**     Therefore, because there is no genuine issue of material fact regarding an adverse employment action, Horsley has failed to make a prima facie case of age discrimination in relation to the transfer from Robinson to Eleventh Street.

### 2. The Transfer From Eleventh Street to McDermott

**{¶26}**     We will assume, without deciding, that Horsley has established a prima facie case of age discrimination in relation to the transfer from Eleventh Street to McDermott. Here, Horsley is a member of the protected class; he testified that his hours were cut at McDermott; Horsley was apparently qualified for the position at either Eleventh Street or McDermott; and he testified that younger employees took his position at Eleventh Street. Therefore, we must examine Scioto Residential's legitimate, nondiscriminatory reason for the transfer.

**{¶27}**     Scioto Residential claims that it transferred Horsley to McDermott because of issues between Horsley and a female resident. As Meade testified in her affidavit, "Due to encounters with a female [Scioto Residential] resident, NH, at the Eleventh Street home, [Scioto Residential] transferred Mr. Horsley to the McDermott home, a facility

with all male residents. If difficulties are presented between staff and a patient, [Scioto Residential] endeavors to transfer employees at the facility, rather than the resident. [Scioto Residential] does this because the [Scioto Residential] homes serve as the permanent homes of the [Scioto Residential] residents and it can be traumatic for the residents to be moved to a new home. * * *." February 5, 2010 Affidavit of Jennifer Meade at ¶7.

**{¶28}** Horsley has offered *no evidence* to rebut Scioto Residential's proffered reason for the transfer to McDermott. Moreover, Horsley misunderstands his burden for showing pretext. During his deposition, Horsley testified that he did not know the reason for his transfer to McDermott.

**{¶29}** "Q  And you moved from 11th to McDermott, but you don't know why?

**{¶30}** "A  Correct.

**{¶31}** "Q  Okay. You have a belief as to the reason why you were moved from 11th to McDermott?

**{¶32}** "A  No.

**{¶33}** "Q  No idea?

**{¶34}** "A  (The witness nodded negatively.)." Deposition of Donald Larry Horsley at 68-69.

**{¶35}** Here, instead of presenting evidence of pretext, Horsley claims that his "answer that he did not know the reason [for the transfer] confirms that there was no discernible reason, absent discrimination or retaliation." Reply Brief of Plaintiff-Appellant Donald Horsley at 1. Horsley's statement, however, is simply not accurate. At this stage, Horsley "bears the burden of showing that the proffered reasons were a

pretext for age discrimination." *Walter v. ADT Security Systems, Inc.*, Franklin App. No. 06AP-115, 2007-Ohio-3324, at ¶23, citing *McDonnell Douglas.* And to carry his burden, Horsley must "point[] to *evidence* that proves that [Scioto Residential's] reasons were a pretext designed to mask age discrimination." *Miller v. Potash Corp. of Saskatchewan, Inc.*, Allen App. No. 1-09-58, 2010-Ohio-4291, at ¶24 (emphasis added). Horsley cannot satisfy his burden by simply claiming that "he did not know the reason" for his transfer. This is not "evidence" of pretext. If it was, any plaintiff could defeat summary judgment by claiming that he or she did not know the reason for an employment decision.

**{¶36}** Therefore, because he presented no evidence of pretext, Horsley has not demonstrated a genuine issue of material fact regarding the legitimate, non-discriminatory reason for Horsley's transfer to McDermott.

3. The Support Manager Position

**{¶37}** Again, we will assume, without deciding, that Horsley has established a prima facie case of age discrimination in relation to the Support Manager position. Here, Horsley is in the protected class; he did not get the promotion to Support Manager; Horsley claims to have been qualified for the Support Manager position; and Scioto Residential promoted two younger employees instead of Horsley. Therefore, we must examine Scioto Residential's legitimate, non-discriminatory reasons for promoting the two younger employees instead of Horsley.

**{¶38}** Scioto Residential claims that it promoted the two younger employees because they were better qualified for the Support Manager position. As Meade testified in her affidavit, "In August of 2009, [Scioto Residential] filled two management

positions at [Scioto Residential], known as Support Manager positions. [Scioto Residential] considered multiple applicants for these positions. [Scioto Residential] gave these positions to Amie Wolfe and to Nick Conley. In [Scioto Residential's] considered judgment, Ms. Wolfe and Mr. Conley were the best qualified applicants for these positions. Both Ms. Wolfe and Mr. Conley had more experience than Mr. Horsley. Both Ms. Wolfe and Mr. Conley, in [Scioto Residential's] opinion, demonstrated, among other attributes, better abilities to work with fellow employees and [Scioto Residential] residents than did Mr. Horsley. Both also demonstrated a better ability to handle stressful situations than did Mr. Horsley. The abilities to work well with other employees and residents, and to handle stressful situations, are requirements for the Support Manager position." April 12, 2010 Affidavit of Jennifer Meade at ¶4.

**{¶39}** Again, Horsley did not present sufficient evidence to rebut Scioto Residential's legitimate, non-discriminatory reasons for promoting Wolfe and Conley. Horsley's own deposition testimony demonstrates this lack of evidence.

**{¶40}** "A  * * * Also, they had two jobs opened up for – like supervisors going from home to home at night, and I requested to be one of those. And they employed young employees.

**{¶41}** "Q  Okay. And you don't have any knowledge of the particular qualifications of those employees that got those jobs?

**{¶42}** "A  No, sir.

**{¶43}** "Q  And you don't have any knowledge of the thought process or analysis that [Scioto Residential] made in deciding to give those jobs to those other employees?

**{¶44}** "A  No, sir." Deposition of Donald Larry Horsley at 70-71.

**{¶45}**     By way of affidavit, and despite his earlier testimony, Horsley later claimed that Conley had less seniority than he did.  But here, Horsley offered no evidentiary support for that statement.  And "[w]hen the moving party puts forth evidence tending to show that there are no genuine issues of material fact, the nonmoving party may not avoid summary judgment solely by submitting a self-serving affidavit containing no more than bald contradictions of the evidence offered by the moving party.  To conclude otherwise would enable the nonmoving party to avoid summary judgment in *every* case, crippling the use of Civ.R. 56 as a means to facilitate the early assessment of the merits of claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial." *Mosley v. Miami Shores of Moraine, L.L.C.*, Montgomery App. No. 21587, 2007-Ohio-2138, at ¶13 (emphasis sic) (internal quotation omitted).  See, also, *McPherson v. Goodyear Tire & Rubber Co.*, Summit App. No. 21499, 2003-Ohio-7190, at ¶36; *Porter v. Saez*, Franklin App. No. 03AP-1026, 2004-Ohio-2498, at ¶43.  As such, Horsley's bare assertion, standing alone, does not create a genuine issue of material fact that promoting Conley was a pretext for age discrimination.

**{¶46}**     Therefore, because he did not present sufficient evidence of pretext, Horsley has not demonstrated a genuine issue of material fact regarding the legitimate, non-discriminatory reasons for promoting younger employees to the Support Manager position.

4. Horsley's Termination

**{¶47}**     Once more, we will assume, without deciding, that Horsley established a prima facie case of age discrimination in relation to his termination.  Here, Horsley is in the protected class; he suffered an adverse employment action; and Horsley appears to

be qualified for his former position at Scioto Residential. There is some dispute as to whether Horsley was replaced by a younger employee. But we will assume, without deciding, that he was. Therefore, we must examine Scioto Residential's legitimate, non-discriminatory reasons for terminating Horsley.

**{¶48}** Scioto Residential claims that it terminated Horsley because he "was copying and removing from [Scioto Residential] confidential patient records. * * * Copying and/or removing patient records is a * * * violation of [Scioto Residential] rules and is grounds for immediate suspension and termination." February 5, 2010 Affidavit of Jennifer Meade at ¶9. In July 2007, Horsley had been warned about copying patient medical records. And despite that warning, two Scioto Residential employees witnessed Horsley copying and/or removing patient medical records in September 2007. As such, Scioto Residential claims that it terminated Horsley "for reason of the alleged copying and removal of [Scioto Residential] patient records." February 5, 2010 Affidavit of Jennifer Meade at ¶11.

**{¶49}** Here, we find that Horsley has not raised a genuine issue of material fact regarding his termination. Horsley has not presented sufficient evidence to demonstrate any of the following: (1) that the alleged copying-and-removal incident has no basis in fact; (2) that the alleged copying-and-removal incident did not actually motivate his discharge; or (3) that the alleged copying-and-removal incident was insufficient to motivate his termination.

a. No Basis in Fact

**{¶50}** Horsley claims that he did not copy or remove patient medical records. And because of his denial, Horsley claims that he has created a genuine issue of material

fact regarding the proffered reason for his termination.  That is, Horsley argues that summary judgment is inappropriate because a dispute exists as to whether the copying-and-removal incident actually happened.  We, however, agree with the United States Sixth Circuit Court of Appeals, which held that "the plaintiff must allege more than a dispute over the facts upon which his discharge was based.  He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action.  See *Smith v. Chrysler*, 155 F.3d 799, 806-07 ([C.A.6,] 1998) (citing *Fischbach v. Dist*[.] *of Columbia Dept. of Corrections*, 86 F.3d 1180, 1183 ([C.A.D.C.]1996) ('[I]f the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so.')).

**{¶51}**     "In order to determine whether the defendant had an 'honest belief' in the proffered basis for the adverse employment action, this Court looks to whether the employer can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision was made.  See *Smith*, 155 F.3d at 807. * * * If there is no material dispute that the employer made a 'reasonably informed and considered decision' that demonstrates an 'honest belief' in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual."  *Braithwaite v. Timken Co.* (C.A.6, 2001), 258 F.3d 488, 493-94.  See, also, *Chen v. Dow Chemical Co.* (C.A.6, 2009), 580 F.3d 394, 401 ("When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial,

or baseless.") (internal quotation omitted); *Wylie v. Arnold Transp. Servs., Inc.* (S.D.Ohio 2006), 494 F.Supp.2d 717, 725-26.

**{¶52}**     Here, the uncontested evidence demonstrates that Scioto Residential made a reasonably informed and considered decision before terminating Horsley.  First, Horsley had been warned about copying patient records before the September 2007 incident.  Second, Scioto Residential relied on two eyewitnesses who saw Horsley engaged in prohibited activities.  Third, supervisors at Scioto Residential met with Horsley to discuss the allegations, thereby allowing him the opportunity to respond.  And fourth, Scioto Residential apparently investigated the matter before terminating Horsley.

**{¶53}**     In contrast, Horsley has presented no evidence that Scioto Residential did not honestly believe in the proffered reason for his termination.  Horsley's own testimony demonstrates the lack of evidence on this issue.

**{¶54}**     "Q  Do you believe that there is another or different reason that you were fired from [Scioto Residential]?

**{¶55}**     "A  Not to my knowledge, no, sir.

**{¶56}**     "Q  Do you have any evidence that there was a different reason why you were fired from [Scioto Residential]?

**{¶57}**     "A  No.

**{¶58}**     "Q  You merely believe there was a different reason?

**{¶59}**     "A  No.

**{¶60}**     "Q.  So if I understand your testimony today correctly, you indicate that the reason that it was offered to you as to why you were terminated was for allegedly copying patient records; correct?  That was the reason offered?

**{¶61}**      "A  Yes.

**{¶62}**      "Q  As you sit here, you are not aware of a different reason that [Scioto Residential] may have had for terminating you; correct?

**{¶63}**      "A  No, sir.

**{¶64}**      "Q  You – I asked you even if you believed that there was a different reason, whatever that reason was, good, bad or indifferent, that you don't believe that there is a different reason that they fired you; correct?

**{¶65}**      "A  Correct.

**{¶66}**      "Q  And as you sit here, you have *no evidence* that there was a different reason that they fired you other than their belief that you had copied a patient's record?

**{¶67}**      "A  Correct."  Deposition of Donald Larry Horsley at 67-68 (emphasis added).

**{¶68}**      As his deposition testimony demonstrates, Horsley failed to present any evidence that Scioto Residential did not honestly believe in the proffered reason for his termination.  Therefore, there is no genuine issue of material fact as to whether Scioto Residential honestly believed in the copying-and-removal incident.

b. The Actual Motivation for Horsley's Discharge

**{¶69}**      Here, Horsley has failed to present any evidence that his termination was motivated by something other than the copying and removal of patient records.  As we noted above, Horsley agreed that he had no evidence of any other reason for his termination.  See, generally, *Senu-Oke v. Bd. of Edn. of Dayton City School Dist.*, Montgomery App. No. 20967, 2005-Ohio-5239, at ¶38 ("[M]ere conjecture that an employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."), citing *Branson v. Price River Coal Co.* (C.A.10,

1988), 853 F.2d 768, 772. Therefore, Horsley has not established a genuine issue of material fact as to whether something other than the copying-and-removal incident actually motivated his discharge.

### c. Insufficient to Motivate Horsley's Termination

**{¶70}** Horsley argues that, even if he engaged in the copying and removal of patient records, his actions were insufficient to motivate termination. Instead, Horsley contends that "the proper penalty * * * would have been a five day suspension, not termination, as confirmed by the Ohio Bureau of Unemployment Compensation." Brief of Plaintiff-Appellant Donald Horsley at 19. Aside from his own affidavit, there is no evidence in the record to corroborate Horsley's claim that he should have received a "five-day suspension." This is significant because "self-serving affidavits, unsupported and without corroborating evidentiary materials, are not sufficient to create a genuine issue of material fact on summary judgment[.]" *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 176 Ohio App.3d 54, 2008-Ohio-1490, at ¶46, citing *Am. Heritage Life Ins. Co. v. Orr* (C.A.5, 2002), 294 F.3d 702, 710 (other citations omitted).

**{¶71}** But even if the Ohio Bureau of Unemployment Compensation did make a five-day-suspension finding, there is ample evidence that copying and removing patient records was sufficient motivation for Horsley's termination. See *Abdulnour v. Campbell Soup Supply Co.* (C.A.6, 2007), 502 F.3d 496, 504 ("[S]ummary judgment is appropriate * * * if the plaintiff 'only created a weak issue of fact * * *' and there is ample evidence to support the employer's position."), quoting *Reeves v. Sanderson Plumbing Products, Inc.* (2000), 530 U.S. 133, 148. Copying and removing patient records violates at least

one Scioto Residential policy and at least two Scioto Residential work rules.  More importantly, copying and removing patient records may violate state law.  See R.C. 5123.62(T) (providing that "[t]he rights of persons with mental retardation or a developmental disability include * * * [t]he right to confidential treatment of all information in their personal and medical records").  We believe that multiple violations of company policy and, perhaps, state law are a sufficient cause for discharge.  And especially because Horsley had been warned about copying patient records in the past, there is ample evidence that the September 2007 copying-and-removal incident was sufficient motivation for his termination.

**{¶72}**     Accordingly, no genuine issue of material fact exists as to whether the copying-and-removal incident was sufficient to motivate Horsley's discharge.

### 5. Age Discrimination Synopsis

**{¶73}**     In summary, we find that Scioto Residential is entitled to summary judgment on Horsley's age discrimination claim.  Regarding the transfer from Robinson to Eleventh Street, Horsley did not establish a prima facie case of age discrimination.  Regarding the transfer from Eleventh Street to McDermott, Horsley presented no evidence that Scioto Residential's reason for the transfer was pretextual.  Regarding the promotion to Support Manager, Horsley has not demonstrated a genuine issue of material fact regarding Scioto Residential's legitimate, non-discriminatory reasons for promoting younger employees.  And finally, Horsley has not shown by a preponderance of the evidence that his termination was a pretext for impermissible age discrimination.

**{¶74}**     Therefore, after construing the record and all inferences therefrom in Horsley's favor, we find (1) that there is no genuine issue as to any material fact, (2) that

Scioto Residential is entitled to judgment as a matter of law on Horsley's age discrimination claim, and (3) that reasonable minds can come to just one conclusion, and that conclusion is adverse to Horsley.

### C. Horsley's Gender Discrimination Claims

**{¶75}** "Ohio courts have adopted the *McDonnell Douglas* formula to claims for sex discrimination brought under R.C. Chapter 4112." *Tack v. PCC Airfoils, Inc.*, Stark App. No. 2008CA15, 2008-Ohio-6898, at ¶23, citing *Kundtz v. AT & T Solutions, Inc.*, Franklin App. No. 05AP-1045, 2007-Ohio-1462, at ¶46, in turn citing *Starner v. Guardian Indus.* (2001), 143 Ohio App.3d 461, 471. "However, in cases involving reverse gender discrimination, courts have modified the *McDonnell Douglas* standard to enable plaintiffs who are members of a dominant group to prove a prima facie case of discrimination. To show reverse discrimination and to avoid a summary judgment, the plaintiff must establish a prima facie case by showing: (1) background circumstances supporting the suspicion that the defendant is the unusual employer who discriminates against the majority; and (2) that the employer treated employees who were similarly situated, but not members of the protected group, more favorably." *Tack* at ¶24 (citations omitted). See, also, *Bogdas v. Ohio Dept. of Rehab. & Corr.*, Franklin App. No. 09AP-6327, 2009-Ohio-6327, at ¶31; *Murray v. Thistledown Racing Club, Inc.* (C.A.6, 1985), 770 F.2d 63, 67. Again, Horsley must show a prima facie case of reverse gender discrimination by a preponderance of the evidence. *Harding v. Gray*, (C.A.D.C.1993), 9 F.3d 150, 152; *Smith v. City of Dayton* (S.D.Ohio 1993), 830 F.Supp. 1066, 1073.

**{¶76}**     We find that Horsley has not established a prima facie case of reverse gender discrimination.  Here, Horsley has not presented enough evidence to demonstrate that Scioto Residential is the unusual employer that discriminates against males.  Horsley's affidavit contains the only evidence relevant to the unusual-employer issue.  Therein, Horsley states that he is "aware that [Scioto Residential's] employee base is approximately 90% female[.]"  Affidavit of Plaintiff Donald Horsley at ¶3.  Horsley offers no support for his assertion about Scioto Residential's workforce, and "bare assertions simply are not enough to make a prima facie case of discrimination."  *Harris v. Greater Cleveland Regional Transit Auth.*, Cuyahoga App. No. 89541, 2008-Ohio-676, at ¶16, citing *Lennon v. Cuyahoga Cty. Juvenile Court*, Cuyahoga App. No. 86651, 2006-Ohio-2587, at ¶16-17.  See, generally, *Sutherland v. Michigan Dept. of Treasury* (C.A.6., 2003), 344 F.3d 603, 615-16 (finding that the plaintiff established a prima facie case of reverse discrimination because the plaintiff "provided a substantial amount of statistical data relating to * * * promotion and hiring patterns").  In other words, Horsley's bare assertion about Scioto Residential's work force does not provide the specific facts necessary to establish a prima facie case of reverse gender discrimination.

**{¶77}**     Horsley also claims that "many of the persons who received better treatment than [he did] were female."  Brief of Plaintiff-Appellant Donald Horsley at 15.  For that reason, Horsley argues that Scioto Residential is the unusual employer that discriminates against males.  But in his brief, Horsley fails to note (1) who, exactly, received better treatment than he did or (2) how, exactly, these individuals received better treatment.  Therefore, in this regard, Horsley has failed to demonstrate error with reference to the record.  Nevertheless, we have reviewed Horsley's affidavit and

deposition testimony for evidence that Scioto Residential is the unusual employer that engages in reverse gender discrimination. And although Horsley mentioned several females who supposedly received more work hours and opportunities for overtime, Horsley also stated that he was passed over for a promotion that went to *another male*. As Horsley noted, "I was denied promotion to a Support Manager position, which position was awarded to a less qualified, younger 'rehired' employee of defendants. * * * [I]t was Nick Conley who received the position." Affidavit of Plaintiff Donald Horsley at ¶11. A male receiving a promotion does *not* support the suspicion that Scioto Residential discriminates against male employees. In fact, Conley receiving the Support Manager position supports the opposite inference – that Scioto Residential does not discriminate against males.

**{¶78}** Thus, Horsley failed to establish a prima facie case of reverse gender discrimination by a preponderance of the evidence. More specifically, Horsley failed to establish that Scioto Residential is the unusual employer who discriminates against males. Therefore, there is no genuine issue of material fact regarding Horsley's reverse-gender-discrimination claim, and Scioto Residential is entitled to judgment as a matter of law. See, e.g., *Tack* at ¶26-47 (finding that "[a]ppellant failed to establish that [a]ppellee is the unusual employer who discriminates against male employees").

### D. Whistleblower Claim

**{¶79}** "Under R.C. 4113.52, Ohio's Whistleblower Statute, an employer may not take disciplinary or retaliatory action against an employee who reports certain violations. The statute addresses a situation in which an employee, in the course of his employment, becomes aware of a legal violation that the employer has the authority to

correct, and the employee reasonably believes that the violation is either a criminal offense that is likely to cause an imminent risk of physical harm or a hazard to public health or safety, or a felony.

**{¶80}**    "Under those circumstances, the employee must orally notify his supervisor or other responsible officer of the employer of the violation and subsequently file with that person a written report that provides sufficient detail to identify and describe the violation.  If the employee satisfies those requirements and the employer fails to correct or make a good-faith effort to correct the violation within 24 hours, the employee may then file a written report with outside authorities."  *Abrams v. Am. Computer Technology*, 168 Ohio App.3d 362, 2006-Ohio-4032, at ¶34-35 (internal citations to R.C. 4113.52 omitted).

**{¶81}**    "Clearly, the provisions of R.C. 4113.52(A)(1) contemplate that the employer shall be given the opportunity to correct the violation."  *Contreras v. Ferro Corp.* (1995), 73 Ohio St.3d 244, 248.  Thus, "[i]n order for an employee to be afforded protection as a 'whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute."  Id. at syllabus; see, also, *Abrams* at ¶40 ("To be afforded protection as a whistleblower, an employee must strictly comply with the mandates of R.C. 4113.52.").

**{¶82}**    Here, Horsley does not even allege that he complied with the requirements of R.C. 4113.52.  "The statute mandates that the employer be informed of the violation both orally and in writing.  An employee who fails to provide the employer with the required oral notification and written report is not entitled to statutory protection for reporting the information to outside authorities."  *Contreras* at 248.  Horsley did make

various complaints to outside officials. But nowhere does he claim that he first provided Scioto Residential with the required oral notification and written report. Instead, Horsley maintains that Scioto Residential was "on notice" of the perceived violations. Brief of Plaintiff-Appellant Donald Horsley at 20. Even if this were true, Scioto Residential being "on notice" is insufficient to invoke the protections of R.C. 4113.52.

**{¶83}**   "[I]f an employee does not 'whistle' both orally and in writing, he is not a whistleblower." *Abrams* at ¶40. Here, Horsley does not even claim that he properly notified his employers of the perceived violations. As a result, no reasonable mind could find that he "properly bl[e]w the whistle." Id.

**{¶84}**   Because there are no genuine issues of material fact regarding Horsley's failure to comply with R.C. 4113.52, Scioto Residential is entitled to judgment as a matter of law on Horsley's whistleblower claim.

### E. Conclusion

**{¶85}**   After construing the record and all inferences therefrom in Horsley's favor, we find the following: (1) there are no genuine issues of material fact as to Horsley's age discrimination, gender discrimination, or whistleblower claims; (2) Scioto Residential is entitled to judgment as a matter of law on all of Horsley's claims; and (3) reasonable minds can come to just one conclusion as to all of Horsley's claims, and that conclusion is adverse to Horsley.

**{¶86}**   Accordingly, we overrule Horsley's assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court

BY:_____
     Roger L. Kline, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**