JOURNAL ENTRY AND OPINION.
{¶ 1} Defendants-appellants, Gregory Cingle, in his capacity as Finance Director of the City of Brook Park, and the City of Brook Park (collectively referred to as "the city"), appeal the trial court's grant of summary judgment in favor of plaintiff-appellee Thomas Coyne, the former mayor of Brook Park, concerning the amount of unused, accumulated sick leave compensation due to him.
 {¶ 2} Coyne had served as mayor of the city for twenty years when he retired at the end of 2001. At the time he was elected to his first term in January of 1981, the City Charter did not provide for sick time for its elected officials, although the other city employees were able to earn and accrue sick time. Full-time city employees who had served for ten or more years also received three-eighths (3/8) of any accumulated sick time upon retirement.
 {¶ 3} In 1993, the City Council passed an ordinance providing to the mayor "any and all benefits as provided to all full-time employees generally." Ord. 7833-1993, codified as Section 131.01(f). This ordinance provided the mayor with sick time which accrued at a rate of four and six-tenths (4.6) hours for each eighty hours worked. At that time, the compensation for unused sick time at retirement was still three-eighths (3/8) of the accumulated unused time. On December 26, 2001, five days before the mayor retired, the compensation rate for full-time employees who retire with unused accumulated sick time was changed to five-eighths.
 {¶ 4} At his retirement, Coyne applied for compensation at the five-eighths rate for his unused accumulated sick time for the twenty years he was mayor. The city sent him a check for $20,501.90. This amount was calculated by starting with the January 1, 1994 effective date of the 1993 amendment and at the three-eighths rate. Coyne claimed, however, he was owed $75,437.70, an amount calculated by using an accrual of sick leave dating back to his first mayoral term in 1980 and at the five-eighths rate. Coyne filed suit against the finance director and the city for the balance of the amount he claimed was due. The trial court found in his favor and ordered the city to pay him the full amount. Appealing, the city presents two assignments of error, the first of which states:
The trial court erred by declaring that the appellee was entitled to payment for unused sick leave he earned and accrued between January 1, 1981, the date he first took office as mayor, and December 31, 1993.
 {¶ 5} The appellate court reviews a summary judgment de novo.Hillyer v. State Farm Mut. Auto Ins. Co. (1996), 131 Ohio App.3d 172,175. The appropriate test for that review is found in Civ.R. 56(C), which states that summary judgment may be granted when, first, there is no genuine issue of material fact to be litigated; second, as a matter of law, the moving party is entitled to judgment; and, third, after viewing the evidence most favorably to the party against whom the motion was made, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party. Temple v. Wean (1977), 50 Ohio St.2d 317, 327.
 {¶ 6} Initially, the party who seeks summary judgment has the burden of demonstrating the absence of any issue of material fact for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330. Once the moving party has satisfied that initial burden, however, the nonmoving party then has a similar burden of showing that specific facts demonstrate that a genuine issue of fact exists for trial. Dresher v. Burt (1996),75 Ohio St.2d 280. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-59.
 {¶ 7} The city correctly argues that under the laws of Ohio, Coyne is not eligible for sick leave. R.C. 124.38 grants sick leave to employees of various government agencies. Specifically, the statute provides in pertinent part:
"Each of the following shall be entitled for each completed eighty hours of service to sick leave of four and six-tenths hours with pay:
"(A) Employees in the various offices of the county, municipal, and civil service township service, other than superintendents and management employees, as defined in section 5126.20 of the Revised Code, of county boards of mental retardation and developmental disabilities;
"(B) Employees of any state college or university;
"(C) Employees of any board of education for whom sick leave is not provided by section 3319.141 [3319.14.1] of the Revised Code."
 {¶ 8} This section applies, however, only to employees who fit the definition set forth in R.C. 124.01(F):
 {¶ 9} "`Employee' means any person holding a position subject to appointment, removal, promotion, or reduction by an appointing officer." As an elected official, Coyne does not fit the definition of one who was appointed; rather, he is an appointing officer. Therefore, he is not entitled to sick leave under the statute.
 {¶ 10} Under home-rule, however, the council has the authority to provide the mayor with benefits beyond any granted in a statute. In a case involving county employees, the Supreme Court clarified that R.C. 124.38
"provides, in pertinent part, that `* * * each employee in the various offices of the county * * * shall be entitled for each completed eighty hours of service to sick leave of four and six-tenths hours with pay. * * * Unused sick leave shall be cumulative without limit. * * *'" Emphasis omitted.
 {¶ 11} The Court further clarified, "R.C. 124.38 neither establishes nor limits the power of a political subdivision. Rather, it ensures that the employees of such offices will receive at least a minimum sick leave benefit or entitlement." Ebert v. Stark Cty. Bd. ofMental Health (1980), 63 Ohio St.2d 31, 32, emphasis omitted. In June of 1993 the city passed an ordinance which provided that, "[e]ffective January 1, 1994, the full time Mayor shall be provided any and all benefits as provided to all full time [sic] employees generally." Brook Park Ord. 131.01(f). Coyne argues that this ordinance provides him with the right to accrue sick leave. We agree. Coyne further argues, however, that this benefit began in his first term for mayor in 1981. On this point we disagree.
 {¶ 12} Nothing in the ordinance indicates that the council intended the ordinance to be retroactive. In fact, although the ordinance was passed in June of 1993, it expressly states that it is not effective until January 1, 1994. This provision contradicts any claim that it was intended to be retroactive.
 {¶ 13} Further, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48. The courts have consistently held that only with special specific language may a statute be applied retroactively. "Absent a clear pronouncement by the General Assembly that a statute is to be applied retrospectively, a statute may be applied prospectively only. R.C. 1.48 applied." State v. LaSalle
(2002), 96 Ohio St.3d 178, paragraph one of the syllabus. It is axiomatic that this constitutional restriction against retroactive application of laws also applies to ordinances. See, Gibson v. Oberlin (1960),171 Ohio St. 1; Sentinal Police Assn. v. Cincinnati (April 17, 1996), Hamilton App. No. C-940610; Smith v. Wadsworth (Oct. 23, 1996), Medina App. No. 2550-M.
 {¶ 14} In the absence of any evidence that it was intended to be applied retroactively, an ordinance must be applied only prospectively. Coyne is entitled, therefore, to payment for sick leave accrued only from the term following the January 1, 1994 effective date of the ordinance until his retirement in 2001. This assignment of error is affirmed.
 {¶ 15} The second assignment of error states:
"II. The trial court erred by holding that compensation paid to an elected official for accrued, but unused sick leave upon retirement could be increased by ordinance during the term of office because such increases are expressly forbidden by O.R.C. Section 737.07 and Section 4.04 of the Brook Park Charter."
 {¶ 16} Coyne argues that the city used the wrong rate in calculating his payment for unused sick leave. Five days before Coyne was scheduled to retire, council passed an emergency ordinance which amended the ordinance governing sick leave compensation upon retirement from a payout of three-eighths of the value of the accrued but unused sick leave to five-eighths of the accrued but unused sick leave. This new ordinance also stipulated that "[s]uch payment shall be made in the employee's final paycheck." Brook Park Ord. 153.021(a). Finally, the new ordinance stated: "[T]his Ordinance is hereby declared to be an emergency measure immediately necessary for the preservation of the public peace, health, safety and welfare of said City, and for the further reason of amending Section 153.021 of the Brook Park Codified Ordinances; therefore, this Ordinance shall take effect and be in force immediately from and after its passage and approval by the Mayor." Id. at Section 4. The ordinance took effect the same day it was passed.
 {¶ 17} The city paid Coyne for his accrued sick leave at the three-eighths rate in effect before the amendment. The city argues that paying Coyne at the five-eighths rate would violate the Ohio.
 {¶ 18} Constitution, Article II, Section 20[1] and R.C.731.07[2] both of which prohibit an increase in salary to an elected officer during the course of his current term of office.[3]
 {¶ 19} Coyne argues, on the other hand, that this payment for unused sick leave is immune to the restrictions of the constitution and statute because it does not qualify as salary or compensation. Because it is not payable until retirement, he states, it is neither salary nor compensation. Coyne concedes that increases in salary or compensation are forbidden by law during a term. He claims, however, that the increase in the value of sick leave "does not satisfy the definition of compensation or salary * * * because it is not a reward paid to a public officer for the performance of his official duties." Although Coyne argues extensively that the sick leave payout is not salary or compensation, he fails to state what he does consider it to be.
 {¶ 20} The test of what constitutes salary or compensation under R.C. 733.07 and the Constitution is whether additional moneys are paid out of the treasury to the office holder. As the Ohio Supreme Court noted, "the terms `salary' and `compensation' do not mean a thing when cases of this character are being considered, the whole question being, `Can the number of dollars payable to an incumbent of a public office be increased by the enactment of a statute during his term of office?'"State ex rel. Boyd v. Tracy, Auditor (1934), 128 Ohio St. 242, 253, citing State ex rel. v. Raine, Auditor (1892), 49 Ohio St. 580. The Court held that whether a payment is called salary or compensation is irrelevant and that they are one and the same for the purposes of the statute and constitution. The amount of money to be paid out of the public treasury to an office-holder may not be increased by legislation passed during the pendency of an elected officer's term. In State ex rel.Artmayer v. Bd. of Trustees of Delhi Township (1975), 43 Ohio St.2d 62, the Supreme Court held that its holding in Boyd is expressly applicable to "cases arising under Section 20, Article II" of the Ohio Constitution. The increase-in-dollars test applies, therefore, to office-holders like a mayor.
 {¶ 21} Salary and compensation are equivalent for the purposes of this issue. Fringe benefits are considered compensation. The Ohio Supreme Court has held that compensation includes fringe benefits like health insurance, sick leave, and vacation pay. State ex rel. Parsons v.Ferguson, Auditor (1976), 46 Ohio St.2d 389, 391; State ex rel. Wilson,Judge v. Bd. of County Commissioners for Brown County (Sept. 30, 1983), Brown App. No. 83-04-004, Ohio App. LEXIS 11948, at *5. In Parsons, the Ohio Supreme Court specifically addressed the payout of sick leave at the end of service and held that such a payout is a fringe benefit.
 {¶ 22} Coyne further argues, however, that because the moneys under the payout are not paid until retirement, they are not compensation for serving in the office. The ordinance states that the payout "shall be made in the employee's final paycheck." Brook Park Ord. 153.021(a). This argument fails. The employee's final paycheck is his final compensation or salary for his services to the municipality. The sick time was earned as a direct result of his service as mayor. It follows, therefore, that payment for unused sick time is compensation for his services.
 {¶ 23} Because the ordinance increasing the value of the payout of sick leave was passed during Coyne's term of office, he is not entitled to receive his payment at the new rate of five-eighths. He is, by virtue of the ordinance enacted in 1994, entitled to payment of three-eighths of the value of his unused sick leave that accumulated from the beginning of his last term of office, which began after the 1994 ordinance took effect, to the date he retired.
 {¶ 24} The order of the trial court is vacated and the case reversed and remanded for further proceedings consistent with this opinion.
This cause is reversed and remanded.
KENNETH A. ROCCO, A.J., and COLLEEN CONWAY COONEY, J., concur.
[1] This section states, "The General Assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term, unless the office is abolished."
[2] R.C. 731.07 provides, "The salary of any officer of a city shall not be increased or diminished during the term for which he was elected or appointed. This section does not prohibit the payment of any increased costs of continuing to provide the identical benefits provided to an officer at the commencement of his term of office. * * *"
[3] The mayor of a city is an officer of the city. See R.C. 733.01, which states:
"The executive power of cities shall be vested in a mayor, president of council, auditor, treasurer, director of law, director of public service, director of public safety, and such other officers and departments as are provided by Title VII [7] of the Revised Code.
"Such executive officers shall have exclusive right to appoint all officers, clerks, and employees in their respective department or offices and remove or suspend any of such officers, clerks, or employees, subject to the civil service laws." R.C. 733.01.