[Cite as *Mender v. Chauncey*, 2015-Ohio-4105.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

Ginger Mender, et al.,               :        Case No. 14CA34

    Plaintiffs-Appellants,           :

    v.                               :        <u>DECISION AND
JUDGMENT ENTRY</u>

The Village of Chauncey, et al.,     :

    Defendants-Appellees.            :        **RELEASED: 9/25/2015**

_____

<u>APPEARANCES</u>:

Kristina Melomed and Kenneth C. Podor, The Podor Law Firm, LLC, Solon, Ohio, for appellants

Randall L. Lambert, Lambert Law Office, LLC, Ironton, Ohio, for appellees

_____

Harsha, J.

{¶1}   Ginger Mender filed a complaint against the Village of Chauncey alleging gender discrimination, defamation, civil conspiracy, intentional infliction of emotional distress, and respondeat superior liability for acts of the Village's agents or employees. Her husband Stace Mender and her two daughters, Merissa Nicholson and Cassie Gardner, were co-plaintiffs asserting loss of consortium claims.[1] Her appeal contests the trial court's directed verdict in favor of the Village following the close of her case-in-chief. She argues that she presented sufficient evidence to establish a prima facie case of gender discrimination, defamation and intentional infliction of emotional distress.  Her

_____

[1] Initially Ginger Mender asserted six additional claims for constructive discharge, intentional interference with employment, malicious prosecution, abuse of process, and Ohio Whistleblower violations against the Village and legal malpractice against the village solicitor. Those claims were dismissed pursuant to defendants' Civ. R. 12(B)(6) motion. Of the numerous individual defendants named in the complaint, several were either voluntarily dismissed or were dismissed upon motion as deceased. The remaining individual defendants were sued in their official capacity and were joined with the Village as one party defendant.

remaining claims are either derivative or dependent upon her claims of gender

discrimination, defamation and intentional infliction of emotional distress.

{¶2}    However, the trial court correctly granted a directed verdict in defendants'

favor on each of Ms. Mender's claims. Even if we assume that she was an "employee"

of the Village for the purpose of her claim for gender discrimination, Ms. Mender failed

to show that she was replaced by, or her discharge permitted the retention of, a person

of comparable qualifications outside the protected class, i.e. a male. On her defamation

claim, as a public official she was required but failed to demonstrate "actual malice" with

convincing clarity to establish the requisite degree of fault.  And she failed to prove

extreme or outrageous conduct sufficient to support her claim for intentional infliction of

emotional distress. Because her three primary claims fail, her civil conspiracy claim,

which requires the existence of an unlawful act independent from the actual conspiracy,

must also fail. Finally, the derivative claims of respondeat superior and loss consortium

must also fail.  A derivative claim cannot afford greater relief than that relief permitted

under a primary claim; a derivative claim fails when the primary claim fails. Therefore

the trial court did not err in granting a directed verdict in favor of the Village on all of

appellants' claims.

## I. FACTS

{¶3}    Voters elected Ginger Mender mayor of the Village of Chauncey for a term

commencing January 2008. Ms. Mender alleges that immediately upon taking office, the

Village conspired and attempted to force her to resign from her position.  She alleges

that various Village employees refused to provide her an office to conduct business,

refused to provide her with keys to Village buildings, took away the use of basic office

equipment, and ridiculed or laughed at her when she attempted to speak at Village council meetings. She also alleges that she was asked to resign and when she refused, three different petitions to remove her from office were filed in the Athens County Court of Common Pleas. She contends that the petitions contained a number of false statements concerning her actions while in office. Ms. Mender alleges that the Village's attempts to force her to resign as mayor were motivated by gender discrimination. She also contends that various Village officials and employees made false and defamatory statements, including that she had prevented the Village from becoming in compliance with the Federal Emergency Management Agency, she had secured unapproved water adjustments, and she had attempted to dissolve the Village.

{¶4} Ms. Mender alleges that there was a Village conspiracy to force her to resign as mayor and the Village's defamation and discrimination constituted intentional infliction of emotional distress. The acts of discrimination, defamation, intentional infliction of emotional distress, and conspiracy were allegedly committed during the Village officials' and employees' scope of employment with the express consent of the Village, giving rise to the respondeat superior liability claim against the Village. The alleged severe emotional distress caused by the Village gave rise to her family's loss of consortium claims.

{¶5} The Village admitted that it discussed resignation with Ms. Mender, as well as the fact that she could be subjected to a petition for her removal, but denied the brunt of her allegations. The Village characterized Ms. Mender as being frustrated with the disagreements that arose between her and the Village and as being unable to accept the fact that the majority of the authority rests with the legislative body, the Village

Council, and not the mayor. The Village contends that the resulting tension and conflict arose from political power struggles, not gender discrimination.

{¶6} The case proceeded to a jury trial. At the conclusion of Ms. Mender's case-in-chief the Village moved for a directed verdict arguing that Ms. Mender failed to present sufficient evidence for the jury to find gender discrimination. First, it argued that because she was elected by voters, she was not an "employee" of the Village. The Village also argued she presented no evidence that the Village's hiring practices or other conditions of employment discriminated against Ms. Mender on the basis of gender. On her defamation claim the Village argued that because she was an elected public official, she must present evidence of actual malice and she failed to do so. On her claim of intentional infliction of emotional distress, the Village argued that she presented no evidence that the Village's conduct was so extreme and outrageous that it went beyond all possible bounds of decency. The remaining claims were derivative in nature and the Village argued that they must fail as a result of Ms. Mender's failure to present sufficient evidence on the primary claims. The trial court heard brief arguments on the motion and subsequently granted the directed verdict. This appeal followed.

## II. ASSIGNMENT OF ERROR

{¶7} Appellants assign the following error for our review:

> I. "The Court improperly granted Defendants' Civ.R. 50 motion at trial, as it was against the manifest weight of the evidence. The evidence presented at trial created an issue of material fact and did not suffice the standard as dictated in Civ.R. 50(A)(4)."

## III. LAW AND ANALYSIS

{¶8}  Ms. Mender contends that her testimony and that of her husband Stace Mender and daughter Merissa Nicholson provided sufficient evidence to defeat the Village's motion for directed verdict.

### A. Standard of Review

{¶9}  In ruling upon a motion for a directed verdict, the trial court is required to construe the evidence most strongly in favor of the nonmoving party and to determine whether "upon any determinative issue [that] reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). The trial court must give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. *Parks v. Parks,* 4th Dist. Washington App. No. 12CA37, 2013-Ohio-3595, ¶ 8-9, quoting *Keeton v. Telemedia Co. of Southern Ohio*, 98 Ohio App.3d 405, 408, 648 N.E.2d 856 (4th Dist.1994), citing *Broz v. Winland*, 68 Ohio St.3d 521, 526, 629 N.E.2d 395 (1994). When determining whether to grant a motion for directed verdict, the trial court must submit an essential issue to the jury if there exists sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue. *O'Day v. Webb,* 29 Ohio St.2d 215, 280 N.E.2d 896 (1972), paragraph four of the syllabus; *see also Strother v. Hutchinson,* 67 Ohio St.2d 282, 284–285, 423 N.E.2d 467 (1981), quoting *Hawkins v. Ivy*, 50 Ohio St.2d 114, 115, 363 N.E.2d 367 (1977).

{¶10}  A motion for directed verdict does not present a question of fact or raise factual issues, although the trial court is required to review and consider the evidence. *Ruta v. Breckenridge–Remy Co.,* 69 Ohio St.2d 66, 430 N.E.2d 935 (1982), paragraph one of the syllabus. Instead, a motion for directed verdict tests the legal sufficiency of

the evidence rather than its weight or the credibility of the witnesses. *Id.* at 68–69. A motion for directed verdict therefore presents a question of law; and we conduct a de novo review of the trial court's judgment. *Howell v. Dayton Power & Light Co.*, 102 Ohio App.3d 6, 13, 656 N.E.2d 957 (4th Dist.1995); *Keeton* at 409.

### 1. Weighing of the Evidence

**{¶11}** As a preliminary matter, Ms. Mender contends that the trial court engaged in the impermissible weighing of evidence in granting the Village's directed verdict when the court commented on the questionable relevancy of the removal petition and the difficulty it viewed she was having "structuring her evidence." However, the portions of the record she cites involve the trial court's analysis of the motions in limine filed by the parties, not the directed verdict. The Village filed a motion in limine concerning the removal petitions on the ground that it was not an act by the Village, but was filed pursuant to R.C. 733.72, which allows an elector to be joined by four other electors to file a removal petition against a mayor. Because the removal petitions were actions by individual electors, not an act of the Village, the Village argued that the petitions had no relevancy to Ms. Mender's claims against it and could improperly place the Village in a bad light in the jurors' eyes.

**{¶12}** The court heard arguments from counsel on their respective motions and stated that it agreed with the Village concerning the lack of relevancy of the removal petitions and would grant the motion in limine concerning them:

> These petitions for removal are matters brought outside the Village government. The Village government is the objective of the complaint here. And I don't see how those petitions and who signed them and whether they went to the Probate Court or the General Division could be relevant to any of the causes of action that are presented. (Trans. Day 1, p. 17)

**{¶13}** However, the trial court denied the Village's motion in limine concerning the intentional infliction of emotional distress claim, numerous newspaper articles, flood plain management documents, and documents pertaining to financial audits of the Village conducted prior to Ms. Mender's term in office. After the court ruled on the motions in limine, in response to a question by Ms. Mender's counsel concerning the potential use of flood plain management documents and financial audits, the court stated that it would consider their admissibility during trial as they are tendered and would not rule out at the pretrial stage the possibility that some might have relevance. Therefore, it would deny the Village's motion in limine as it related to the newspaper articles, flood plain and audit documents, reserving the right to make a determination as to admissibility during trial:

> How do these audits show gender discrimination? I don't see how the floodplain documents would be relevant either. But I don't want to rule out the possibility that that could, something could be relevant. . . . just because somebody disagrees with a certain particular policy doesn't mean they're trying to inflict emotional distress. And it also doesn't support gender discrimination necessarily either. So I think the Plaintiff has a hard time structuring her evidence. (Trans. Day 1, p. 20-21)

**{¶14}** The trial court's comments concerning the relevancy and structure of Ms. Mender's evidence were made as the court considered the motions in limine, not as it made its ruling on the directed verdict motion. "A motion in limine is a means of raising objection to an area of inquiry to prevent prejudicial questions and statements until the admissibility of the questionable evidence can be determined during the course of the trial." *Independent State Bank of Ohio v. Hartzell*, 4th Dist. Washington App. No. 90CA02, 1991 WL 2197, *2 (Jan. 7, 1991). The purpose of a motion in limine is to avoid injection into the trial of matters which are irrelevant, inadmissible and prejudicial. *State*

*v. French*, 72 Ohio St.3d 446, 449, 650 N.E.2d 887 (1995). Therefore it was appropriate for the trial court to comment on the relevancy and structure of the parties' evidence when ruling upon the motions in limine. We find no evidence that the trial court's remarks at the pretrial stage give a "clear implication" that the court improperly weighed evidence when granting the directed verdict at the close of her case-in-chief, as Ms. Mender argues.

### 2. Gender Discrimination

**{¶15}** Ms. Mender contends that the trial court erred in granting a directed verdict in the Village's favor on her gender discrimination claim. To establish a prima facie case of gender discrimination, Ms. Mender must show that 1) she is a member of the protected class; 2) she was subject to an adverse employment action; 3) she is qualified for the position; and 4) she was replaced by, or her discharge permitted the retention of, a person of comparable qualifications outside the protected class. *Horsley v. Burton*, 4th Dist. Scioto App. No. 10CA3356, 2010-Ohio-6315, ¶17. The plaintiff has the burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Id.* citing *Mosley v. Miami Shores of Moraine, L.L.C.,* 2nd Dist. Montgomery App. No. 21587, 2007-Ohio-2138, ¶ 9.

**{¶16}** Notably, the trial court did not rule on whether Ms. Mender, as an elected official, was a Village "employee" for purposes of her gender discrimination claim under R.C 4112.02. In its earlier decision on the defendants' Civ.R. 12(B)(6) motions, the trial court reviewed the status of the law on whether elected officials are "employees" and concluded that the statutory and case law in Ohio was sufficiently unclear and did not warrant a dismissal on Civ.R. 12(B)(6) grounds. While federal law specifically excludes

persons elected to public office from the definition of "employee" under the federal anti-discrimination statute, 42 U.S.C.S. 2000e(f), the Ohio statute does not contain that specific exclusion.  The trial court noted that in some instances in Ohio law, elected officials are considered employees and in others they are not.  *See State ex rel. Coyne v. Cingle*, 8th Dist. Cuyahoga App. No. 82279, 2003-Ohio-5383 (mayor is not "employee" entitled to sick leave within the meaning of R.C. 124.01(F) and 124.38); *Wolfgang v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. Franklin App. No. 09AP433, 2009-Ohio-6056 (R.C. 145.01 excludes elected officials from definition of public employee); *but see* R.C. 2744.01(B)(for purposes of political subdivision tort liability, elected official is "employee").

{¶17}  The trial court assumed for the purposes of the directed verdict that Ms. Mender was an "employee" of the Village, but determined that she had failed to present any evidence on the fourth element of her gender discrimination claim:  she was replaced by, or her discharge permitted the retention of, a person of comparable qualifications outside the protected class.  The trial court found that there was "absolutely no evidence presented by the Plaintiff on that issue." Ms. Mender argues that, while she did not explicitly testify about this fourth element of her claim, the jury could logically conclude that she was replaced by a male mayor after she resigned because she testified that "she and her predecessor were the only women ever to be mayor of the Village of Chauncey."

{¶18}  Ms. Mender inaccurately characterizes her testimony. She did not testify that her "predecessor" was a woman; she testified that there have only been two female mayors:  "All throughout the history of Chauncey for Mayors they've always been men,

except for one other woman and myself. So there's only been two women." Thus, there was no evidence upon which the jury could logically conclude that the other female mayor was her "predecessor" instead of her "successor." More importantly, even assuming her successor was male, she presented no evidence that the Village took any affirmative steps to place a male in the mayor's office. If the successor was a male voted into office by the electorate, then the Village did not replace Ms. Mender with a person outside the protected class, the voters did.  We find Ms. Mender presented no evidence that the Village replaced her with a person of comparable qualifications outside the protected class or that her discharge permitted the retention of a person outside the protected class.

{¶19}  Accordingly, the trial court correctly granted a directed verdict in favor of the Village on Ms. Mender's gender discrimination claim.

## 2. Defamation

{¶20}  To establish defamation the plaintiff must present evidence of falsity, publication, injury, and fault of at least negligence. *State ex rel. Sellers v. Gerken*, 72 Ohio St.3d 115, 117, 647 N.E.2d 807 (1995); *Jenkins v. Guy*, 4th Dist. Lawrence App. No. 03CA34, 2004-Ohio-4254. A public official or a public figure must demonstrate "actual malice" with convincing clarity to establish the requisite degree of fault to support a defamation claim. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Actual malice means the statement is made with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times,* 376 U.S. at 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686. To establish reckless disregard a defamation plaintiff must present clear and convincing evidence

that the false statements were made with a "high degree of awareness of their probable falsity," *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) or that "the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). The actual malice standard "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'-that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279-80. A showing of actual malice is necessary to promote an "uninhibited, robust, and wide-open" debate on important issues of public concern even though the debate "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.* at 269-270; *see also Burns v. Rice,* 157 Ohio App.3d 620, 2004-Ohio-3228, 813 N.E.2d 25 (10th Dist.). Whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law for the court to decide. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 510–511, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

{¶21} The trial court determined that Ms. Mender presented no evidence of actual malice. Ms. Mender contends that the trial court erred because she presented testimony that Village Council made statements in an open hearing that were false and that her testimony could have persuaded the jury that the Village Council made the statements knowing that they were false. She bases her defamation claim primarily on the Village Council's resignation request, which she testified contained a number of false statements. Mender testified that Council was seeking her resignation because:

(1) it alleged she verbally attacked Councilman Lyons using vulgarities; (2) she refused to vacate 44 Converse Street or turn off phone and internet to that address, which was a house leased to provide office space; (3) she instructed the fiscal officer not to disband the Village police department; (4) she promoted the willful disregard of ordinances among Village residents concerning sewer and water payments and she wrongfully adjusted water bills; (5) she excessively texted on the Village cell phone; (6) she made multiple threats of lawsuits against Village Council and (7) she presented the Village in a negative manner through media outlets.

{¶22} Ms. Mender argues that her testimony concerning the Council's resignation request "could have persuaded a jury that the Village Council statements were made with the knowledge that the statements were definitively false." However, she must present clear and convincing evidence of actual malice and her testimony concerning the resignation request does not rise to that level. Of the statements cited by Village Council in its resignation request, Ms. Mender admitted to using profanity and to refusing to vacate the building leased to provide her with an office. However, her reasons for refusing to vacate the office concerned her inability to remove heavy furniture and her concern with a police evidence storage unit. She denied refusing to have the phone and internet disconnected.  As for the Village's statements concerning excessive texting, she was unable to confirm or deny whether a $354 monthly phone bill with hundreds of texts was her phone line. Ms. Mender testified that the statements concerning the various issues concerning water and sewer matters were not true and she characterized her actions in a different light.  She testified that she believed that a Village employee was marking down water bills and she started her own investigation

and met with residents to review their water bills. Ms. Mender did not present any evidence that the Village Council knew that the statements concerning the water and sewer matters were false at the time they were made. Ms. Mender testified that she opposed the disbanding of the police department, but there was no testimony whether she instructed the fiscal officer not to carry out the ordinance disbanding them or whether the Village knew the statements concerning it were false. There is no testimony in the record concerning litigation threats or whether she presented the Village in an unfavorable light to various media outlets.

**{¶23}** Our review of her testimony reveals no evidence, and certainly not clear and convincing evidence, that the Village had knowledge that the statements were false or that the Village displayed reckless disregard for whether they were false. Accordingly the trial court correctly granted a directed verdict in favor of the Village on Ms. Mender's defamation claim.

3. Intentional Infliction of Emotional Distress

**{¶24}** A successful intentional infliction of emotional distress claim requires a plaintiff to prove: (1) the defendant intentionally or recklessly caused the plaintiff serious emotional distress; (2) the defendant's conduct was "extreme and outrageous"; and (3) the defendant's conduct proximately caused the plaintiff serious emotional distress. *Phung v. Waste Mgmt., Inc.,* 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994); *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), syllabus. A defendant's conduct is not "extreme and outrageous" merely because it is "'tortious or * * * criminal.'" *Yeager,* 6 Ohio St.3d at 374, quoting Restatement of the Law 2d, Torts 73, Section 46, comment d (1965). It also is not "extreme and outrageous" simply because the

defendant "'intended to inflict emotional distress,'" or acted with malice. *Id.* at 374–375,

quoting Restatement, *supra.* Instead, "extreme and outrageous" conduct is conduct that

is

> "'so outrageous in character, and so extreme in degree, as to go beyond
> all possible bounds of decency, and to be regarded as atrocious, and
> utterly intolerable in a civilized community. Generally, the case is one in
> which the recitation of the facts to an average member of the community
> would arouse his resentment against the actor, and lead him to exclaim,
> "Outrageous!" '"

*Id.,* quoting Restatement, *supra.* Moreover, "'mere insults, indignities, threats,

annoyances, petty oppressions, or other trivialities'" do not constitute "extreme and

outrageous" conduct. *Yeager,* 6 Ohio St.3d at 375, quoting Restatement, *supra.* As the

*Yeager* court explained:

> "'The rough edges of our society are still in need of a good deal of filing
> down, and in the meantime plaintiffs must necessarily be expected and
> required to be hardened to a certain amount of rough language, and to
> occasional acts that are definitely inconsiderate and unkind. There is no
> occasion for the law to intervene in every case where some one's feelings
> are hurt. There must still be freedom to express an unflattering opinion,
> and some safety valve must be left through which irascible tempers may
> blow off relatively harmless steam. *See* Magruder, Mental and Emotional
> Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053
> (1936). * * * '"

*Id.,* quoting Restatement, *supra.*

{¶25} Whether conduct rises to the level of "extreme and outrageous" conduct is

initially a question of law. *Sturdevant v. Likley,* 9th Dist. No. 12CA0024–M, 2013–Ohio–

987, ¶ 23; *Morrow v. Reminger & Reminger Co., L.P.A.,* 183 Ohio App.3d 40, 2009–

Ohio-2665, 915 N.E.2d 696 (10th Dist.), ¶ 48. Thus, directed a verdict in a defendant's

favor is warranted when the conduct is not, as a matter of law, "extreme and

outrageous." *See Morrow* at ¶ 48 (noting that a trial court may dismiss an intentional infliction of emotional distress claim under Civ.R. 12(B)(6) when the conduct is not, as a matter of law, "extreme and outrageous"); *see also, Jones v. Wheelersburg Local School Dist.,* 4th Dist. Scioto App. No. 12CA3513, 2013-Ohio-3685, ¶ 39-41.

**{¶26}** Ms. Mender alleges that the Village's discrimination, defamation, and its treatment of her at council meetings and during the course of her term as mayor constituted extreme and outrageous conduct sufficiently establishing her claim for intentional infliction of emotional distress. The trial court focused on the Village's alleged defamatory statements and determined that because the defamation did not reach the level of outrageousness, she failed to establish her claim for intentional infliction of emotional distress. We have reviewed all of the testimony presented in Ms. Mender's case-in-chief and, while the conduct she testified about could be characterized as inconsiderate, unkind, rude, and unprofessional we find no evidence of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

**{¶27}** For example, Ms. Mender testified that she became upset at a Village council meeting after members of Village Council raised questions concerning her husband's drinking habits. She went into a back room and broke down in tears. A Village employee entered the back room to make photocopies and saw Ms. Mender in tears and laughed. In another example, Ms. Mender testified that after she vacated 44 Converse Street, she set up her office in the front room of the Village Hall. The next day, she returned to find that her office furniture, equipment and supplies had been

moved to the back room in a disorganized manner. This does not constitute extreme and outrageous conduct. At most Ms. Mender has proven that the "rough edges" of the Village "are still in need of a good deal of filing down." *Yeager, supra*.

**{¶28}** Accordingly, the trial court correctly granted a directed verdict in favor of the Village on Ms. Mender's intentional infliction of emotional distress claim.

### 4. Civil Conspiracy, Respondeat Superior and Loss of Consortium

**{¶29}** Ms. Mender's remaining claims are dependent upon or derivative of her primary claims of discrimination, defamation and intentional infliction of emotional distress.  To prove a civil conspiracy claim, Ms. Mender's must show:  (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. *Ogle v. Hocking Cty.,* 4th Dist. Hocking App. No. 11CA31, 2013-Ohio-597, ¶ 14.  A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy. *Id.* at ¶15 quoting  *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009–Ohio–2665, 915 N.E.2d 696, ¶ 40 (10th Dist.).

**{¶30}** Ms. Mender contends that the Village's discrimination, defamation and intentional infliction of emotional distress claims are each unlawful acts independent from the conspiracy itself and provide the fourth element of her civil conspiracy claim. She argues that the trial court's erroneous ruling on those claims, necessitates a reversal of the directed verdict on the civil conspiracy claim.  Likewise, she argues that because her respondeat superior and her family's loss of consortium claims are derivative of these primary claims, the trial court's error in granting a directed verdict on the primary claims, necessitates a reversal of the trial court's directed verdict on her and

her family's derivative claims. Because we affirmed the trial court's directed verdict on the primary claims, we find that the trial court did not err in granting defendants' directed verdict motion on Ms. Mender's dependent claim of civil conspiracy. A civil action for civil conspiracy requires a viable claim distinct from the conspiracy in order for the conspiracy claim to survive. In this case, there are no surviving claims, thus, there can be no civil conspiracy. *Walter v. ADT Security Systems, Inc.*, 10th Dist. Franklin App. No. 06AP-115, 2007-Ohio-3324.

{¶31} Similarly, Ms. Mender's and her family's derivative claims must fail. Respondeat superior and loss of consortium claims are derivative and dependent upon the existence of a primary claim. These claims can be maintained only so long as the primary claim continues. Because a derivative claim cannot afford greater relief than that relief permitted under a primary claim, a derivative claim fails when the primary claim fails. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 22 (respondeat superior liability is a vicarious liability that is derivative in nature); *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93, 585 N.E.2d 384 (1992)("a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse"); *Keller v. Foster Wheel Energy Corp.*, 163 Ohio App.3d 325, 837 N.E.2d 859, 2005-Ohio-4821, ¶ 19 (10th Dist.). Therefore, when the trial court properly granted a directed verdict on Ms. Mender's discrimination, defamation, emotional distress, and civil conspiracy claims, it necessarily had to dismiss her respondeat superior and loss of consortium claims as well. Accordingly, we conclude that the trial court properly dismissed all of Ms. Mender's and her family's claims, and we overrule her first and only assignment of error.

## IV. CONCLUSION

{¶32} The trial court did not err when it granted a directed verdict in favor of the Village on Ms. Mender's claims for discrimination, defamation, intentional infliction of emotional distress, civil conspiracy, and respondeat superior and on her family's loss of consortium claims. On her gender discrimination claim, Ms. Mender failed to present evidence that the Village replaced her with a person of comparable qualifications outside the protected class or that her discharge permitted the retention of a person outside the protected class. She failed to prove actual malice by clear and convincing on her defamation claim. And, although she presented testimony that the Village was consistently inconsiderate, unkind, rude and unprofessional towards her, the Village actions were not, as a matter of law, so extreme and outrageous to support her claim for intentional infliction of emotional distress. As a result, her dependent claim of civil conspiracy and her and her family's derivative claims of respondeat superior and loss of consortium must also fail. We overrule appellants' first assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Hoover, P.J. & McFarland, A.J.: Concur in Judgment and Opinion.


For the Court:



BY:  _____

William H. Harsha, Judge



## NOTICE TO COUNSEL


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**